This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Pamela T. Young, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 20 July 2000 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. Liberty Mutual Insurance Company was the carrier on the risk at all relevant times herein.
4. The date of the alleged specific traumatic incident to the plaintiff's back was April 2, 1999.
5. At all relevant times herein, the plaintiff's average weekly wage totaled $918.06, yielding a maximum compensation rate of $560.00.
6. The plaintiff received both short-term and long-term disability benefits from the defendant-employer.
7. The parties stipulated to the plaintiff's medical records from University Family Physicians, Charlotte Orthopedic Specialists, Nalle Clinic, University Hospital, Mercy Hospital, Presbyterian Orthopedic Hospital, and Charlotte Cardiothoracic Surgical Associates.
8. The parties stipulated to the following:
a) Plaintiff's job description;
b) Plaintiff's recorded statement dated April 21, 1999;
 c) Supervisor's Occupational Injury/Illness investigation report dated April 2, 1999 with attached statements of co-workers;
 d) Workers' Compensation First Report of Injury or Illness.
9. The issues presented are:
 a) Whether the plaintiff sustained an injury by accident arising out of the scope of his employment and as a direct result of a specific traumatic incident of the work assigned on April 2, 1999 or otherwise aggravated a pre-existing back condition such that he is entitled to benefits under the North Carolina Workers' Compensation Act?
 b) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff-employee was 59 years old and had worked for the defendant-employer for 22 years. The plaintiff-employee only completed the 7th grade and possesses limited reading skills. Since 1990 the plaintiff-employee has worked for the defendant-employer as a ladle helper or ladle tender preparing ladles before and after heats of molten liquid steel.
2. As a part of his job duties assigned, the plaintiff-employee used a jackhammer on a regular basis to dislodge solidified steel from the nozzles on the ladles. These are designed to hold as much as 50 tons of steel and it can take 10 to 15 minutes or more of continuous use of a jackhammer to dislodge a nozzle that restricts the flow of molten liquid metal. The plaintiff-employee used the jackhammer two to four times a day in his job as a ladle tender.
3. The plaintiff-employee has sustained two previous compensable work-related injuries for this defendant-employer, one to his left knee and one a hernia. Following each of these injuries, plaintiff-employee was released to return to work without restrictions to the ladle tender position. Although he was capable of performing his regular job duties, the plaintiff-employee continued to experience and complain of occasional left leg and hip pain as a result of his job related knee injury.
4. After the plaintiff-employee had knee surgery in 1996, he complained to Dr. Laxer of back pain and an MRI of June 1997 indicated that the plaintiff-employee had degenerative disc disease and a small herniated disc at L4-5.
5. Plaintiff-employee suffered a claudication or total occlusion of the left iliac artery in his left leg and on July 24, 1998, he underwent a bypass procedure by Dr. Charles Harr. Dr. Harr released the plaintiff-employee to return to work with the defendant-employer with no restrictions on September 21, 1998.
6. From September 21, 1998 until after April 2, 1999, the plaintiff-employee did not miss any scheduled workday. In fact, the plaintiff-employee worked a substantial amount of overtime hours during this entire period up to April 2, 1999. Although the plaintiff-employee experienced occasional episodic pain in his left thigh and low back, he was able to perform the duties and tasks assigned to him as ladle tender without difficulty. He complained about pain in his left hip, leg and back to co-workers on March 29, 1999; however, he was able to perform his full work duties on that date.
7. During the week of April 2, 1999, the plaintiff-employee completed his regular shift of 36 hours by working 12 hours per day on Monday, Tuesday and Wednesday. He was scheduled by the defendant-employer to perform overtime work on April 2, 1999 and agreed on April 1, 1999 to work in the place of another co-worker for Saturday, April 3, 1999.
8. On April 2, 1999, the plaintiff-employee reported for work on the evening shift at 6:50 p.m. At approximately 8:20 p.m., the plaintiff-employee had to change a nozzle on a ladle. The plaintiff-employee picked up a jackhammer and began to dig vigorously and continuously for fifteen minutes in an effort to clear the nozzle. During this particular process, the plaintiff-employee had to exert all his strength against the nozzle in an upward direction. At such time, the jackhammer was vibrating against the sides of the opening.
9. After digging the nozzle out, the plaintiff-employee, still holding the jackhammer, turned sideways and suddenly felt sharp pains in his back and down his legs. The plaintiff-employee immediately dropped the jackhammer without returning it to its regular location.
10. Following the incident, the plaintiff-employee was barely able to walk into the caster shack where he located his foreman, Bill Baker. The plaintiff-employee reported his injury to Mr. Baker. Due to the pain in his low back, legs and feet, the plaintiff-employee had to stop work and sit down. The plaintiff-employee experienced numbness in his feet and sharp pains down into his left and right ankles. Because the plaintiff-employee was unable to continue to perform his job duties, Mr. Baker went to the plaintiff-employee's job station and completed the necessary job duties.
11. Plaintiff-employee asked Mr. Baker if he could go to the company doctor and Mr. Baker told him he could not. At 9:30 p.m., the plaintiff-employee requested to go home because of his pain and then walked slowly to the parking lot. This activity usually took four to five minutes, but on this occasion, plaintiff-employee testified that it took him fifteen minutes to make it to his car.
12. On Saturday, April 3, 1999, the plaintiff-employee's wife called Dr. Cardwell's office to schedule an appointment. Dr. Cardwell was not immediately available; however, an appointment was scheduled for April 7, 1999.
13. On April 7, 1999, the plaintiff-employee presented to Dr. Cardwell who noted that the plaintiff-employee was at work when he noticed a sudden onset of severe left posterior hip pain which radiated into his thighs at a sufficiently severe level that plaintiff-employee was unable to continue his job.
14. On April 7, 1999, Dr. Cardwell kept the plaintiff-employee out of work, continued pain medication and referred the plaintiff-employee to Dr. Robert M. McBride, Jr.
15. On April 21, 1999, plaintiff-employee presented to Dr. McBride who indicated that he had not seen the plaintiff-employee since the plaintiff-employee underwent left iliac artery bypass surgery by Dr. Charles Harr in July 1998. Dr. McBride's office note of April 21, 1999 documents that the plaintiff-employee was "basically doing ok until April 2, 1999 when he was moving a jackhammer at work and felt severe onset of pain in his back and shooting down his legs. Left worse to the right, to the inside of his ankle with associated numb sensation." Dr. McBride rendered a diagnosis of moderate degenerative disease, L5-S1, left sciatica, and lumbar strain and gave the plaintiff-employee lifting restrictions of no more than 20 pounds and no use of the jackhammer.
16. Dr. McBride's restrictions given April 21, 1999 prevented the plaintiff-employee from performing his job as a ladle tender and the defendant-employer had no light duty job available.
17. From April 21, 1999 through December 15, 1999, the plaintiff-employee received conservative treatment from Dr. McBride, including a series of three epidural steroid injections; however, this treatment did not give the plaintiff-employee relief. He continued under the same work restrictions given on April 21, 1999 and the defendant-employer remained unwilling or incapable of providing suitable light duty employment.
18. After conservative measures of treatment failed, Dr. McBride performed an anterior discectomy and BAK fusion at L4-5 and L5-S1 of the plaintiff-employee's back on December 15, 1999.
19. Plaintiff-employee has been unable to work in his position as a ladle tender for the defendant-employer since April 2, 1999 as a result of continued weakness, pain and the risk of re-injury to his spine as well as the restrictions given by Dr. McBride.
20. Dr. McBride opined that the plaintiff-employee's jackhammer work aggravated his pre-existing degenerative disk disease.
21. On April 9, 1999, plaintiff-employee sustained an injury by accident arising out of and in the course of his employment with the defendant-employer as a direct result of a specific traumatic incident of the work assigned and which resulted in aggravating and exacerbating the plaintiff-employee's pre-existing condition.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of the scope of his employment with the defendant-employer as a direct result of a specific traumatic incident of the work assigned on April 2, 1999 when, after digging a nozzle out of the ladle using a jackhammer, he turned to take the jackhammer back to a table and experienced an immediate onset of severe pain which shot down into his hip, legs and feet, including the feeling of pins and needles and numbness in his feet. N.C. GEN. STAT. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to receive temporary total disability compensation benefits at the rate of $560.00 beginning April 2, 1999 and continuing until he is able to return to gainful employment or until further Order of the Industrial Commission. N.C. GEN. STAT. § 97-29.
3. As a result of this compensable injury by accident, plaintiff is entitled to have the defendants pay for all medical expenses incurred or to be incurred, as a result of his injury by accident of April 7, 1999, for so long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen the plaintiff's disability. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. § 97-2(19).
4. Defendants are entitled to a credit for the short-term and long-term disability payments the plaintiff received during this period. N.C. GEN. STAT. § 97-30; N.C. GEN. STAT. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter provided, the defendants shall pay to plaintiff temporary total disability compensation at the rate of $560.00 per week beginning April 2, 1999 and continuing until the plaintiff returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay all of plaintiff's medical expenses incurred or to be incurred as a result of his compensable injury by accident of April 7, 1999, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief, and will tend to lessen the period of plaintiff's disability.
3. Defendants shall be entitled to a credit for short-term and long-term disability payments received by plaintiff and not refunded by plaintiff under an employer-funded disability policy.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that the counsel for the plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to the defendant-employer.
5. The defendants shall pay the costs, including expert witness fee to Dr. McBride in the amount of $235.00.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER